```
1  Konrad L. Trope, Esq. SBN 133214
   Novo Law Group, P.C.
2  4631 Teller Ave., Suite 140
   Newport Beach, CA 92660
3  (949) 222-0899 (tel)
   (949) 222-0983 (fax)
4
5  Attorneys for Plaintiff Pacific Information Resources, Inc.
```

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PACIFIC INFORMATION RESOURCES, INC., | CASE NO. _____ |
| Plaintiff, | COMPLAINT FOR CIVIL CONTEMPT AND BREACH OF CONTRACT |
| vs. | DEMAND FOR JURY TRIAL |
| ROSSON VENTURES, LLC; MATTHEW ROSSON, as an individual; LINDA K. ROSSON, as an individual; BARRY T. ROSSON, as an individual, and DOES 1 through 100, inclusive, WHOSE IDENTITIES ARE UNKNOWN, | |
| Defendants. | |

## JURISDICTION AND VENUE

Plaintiff Pacific Information Resources, Inc. ("Pacific") alleges:

1.  Pacific is a California corporation with its principal place of business in Newbury Park, California.

2.  Plaintiff is informed and believes and thereon alleges that Rosson Ventures, LLC is a Nebraska limited liability company with its principal place of business in Florida. Matthew Rosson, Linda K. Rosson, and Barry T. Rosson are residents of Florida. Barry and Linda Rosson are husband and wife, and Matthew is their son. Barry, Linda and Matthew are officers and

1
**COMPLAINT FOR CIVIL CONTEMPT AND BREACH OF CONTRACT**

directors of Rosson Ventures. These four defendants will be referred to collectively as the "Rosson Defendants" or just "Defendants."

3. The true names and capacities of the Defendants sued in this Complaint as DOES 1 through 100, inclusive, whether individual, corporate, associate, or otherwise, presently are unknown to Plaintiff, who therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to set forth the true names and capacities of DOES 1 through 100, inclusive, when they have been ascertained, or at the time of trial herein. Plaintiff is informed, believes, and thereon alleges that each of such fictitiously named Defendants participated in some manner in the events or occurrences referred to hereinafter, and/or proximately caused the damages complained of herein.

4. Barry Rosson holds a Ph.D. in structural engineering. He was a professor in the School of Engineering at the University of Nebraska, in Lincoln, Nebraska when he, Linda Rosson, and Matthew Rosson agreed to the Stipulated Permanent Injunction and Settlement Agreement that is the subject of this lawsuit. In June 2007, he was appointed Dean of Graduate Studies and Programs at Florida Atlantic University in Boca Raton, Florida.

5. The civil contempt claim arises under federal law. *18 U.S.C. § 401*. Therefore, this Court has subject matter jurisdiction based on a federal question. *28 U.S.C. § 1331*. This Court has supplemental jurisdiction over the breach of contract claim because that claim arises from the same case or controversy as the civil contempt. *28 U.S.C. § 1367(a)*.

6. The plaintiff is a citizen of California and the defendants are citizens of Florida. The amount in controversy exceeds $75,000, exclusive of interest and costs. Therefore, this Court also has subject matter jurisdiction over all claims based on the diversity statute. *28 U.S.C. § 1332*.

7. Venue is proper in this district because a substantial part of the events giving rise to the claims occurred in this judicial district. *28 U.S.C. § 1391*.

**FACTS COMMON TO ALL CLAIMS FOR RELIEF**

8. Plaintiff owns and operates the website located at www.searchsystems.net (the "WEBSITE"). Plaintiff has registered two copyrights concerning the WEBSITE. One registration, bearing Registration No. TX 6-275-368 protects the text of the WEBSITE, bearing the URL www.searchsystems.net. In addition, Plaintiff has a copyright registration, bearing Registration No. TX 6-275-367 which protects the PHP Hyper Text Processor source code of the WEBSITE. True and correct copies of the copyright registrations are attached hereto and incorporated herein as *Exhibit "1"*. Plaintiff also has a registration from the United States Patent and Trademark Office for its service mark consisting of the word mark "search systems" within a design or drawing bearing USPTO Trademark Registration No. 2019094 (the "SERVICE MARK"). A true and correct copy of this registration for Plaintiff's registered SERVICE MARK is attached hereto and incorporated herein as *Exhibit "2."* In addition, Plaintiff has continuously, for the preceding five years, at the very least, continuously and openly used variations on its registered SERVICE MARK, but such variations, while not registered, have acquired secondary meaning and thus are protected as more fully described herein. Plaintiff's registered SERVICE MARK and unregistered service marks are collectively hereinafter referred to as the "SERVICE MARKS". The unregistered but protected SERVICE MARKS of Plaintiff include, but are not limited to, the terms: "searchsystems", "searchsystems.net".

9. Plaintiff's business is providing members of the public with access to the public records maintained by various federal, state and local governmental agencies. The applicable governmental agency typically maintains those records in some kind of a searchable database. Those individual databases aggregate a variety of business information, including items such as: corporate filings, criminal and civil court filings, vital records, property records, unclaimed property, professional licenses, bankruptcies, judgments, tax liens, and various other matters compiled from public records.

10. Until the WEBSITE commenced operations in 1997, it was not possible to search for individual results simultaneously across a multitude of databases. As a result, a member of the public attempting to locate a particular piece of information would have to laboriously search each one of thousands of individual databases. Plaintiff developed the technology, which is implemented on the WEBSITE, to search all of these constituent databases, simultaneously.

11. Rather than speculating as to the availability of a desired public record, or where to locate it on the Internet, a user simply can log on to Plaintiff's website, and have access to all of the publicly-available information that exists, and that is indexed and cross-referenced on the WEBSITE. Furthermore, the user avoids the cumbersome necessity, with attendant time and cost constraints, of consulting each one of the individual databases, if more than one of them potentially contains the desired information.

12. In order to accomplish this outcome, Plaintiff has developed a proprietary "search" computer program that enables a user to search for particular records, whereby the user executes a "global" search of all of the thousands of databases indexed and cataloged by Plaintiff, by entering key search terms and parameters. Coupled with the search feature is a "link" feature that enables a user to "click" on the content description for an individual database, the existence of which was disclosed by the search, whereupon the user automatically is re-directed to that database.

13. Plaintiff now provides the public with access to over 35,821 linked individual databases, comprising billions of public records. Before linking a new database to the WEBSITE, Plaintiff evaluates each database for content and usefulness. Plaintiff also authors a complete description of the database, so as to facilitate its identification and use.

14. Plaintiff has been "on line" since the dawn of the Internet in 1997, and the WEBSITE has been extremely successful. In fact, the WEBSITE now is the primary "entry" portal for access to free public records on the Internet. Indeed, Plaintiff has expended millions of dollars with financial resources and countless hours of time, effort, and energy in developing,

4
**COMPLAINT FOR CIVIL CONTEMPT AND BREACH OF CONTRACT**

operating and promoting the WEBSITE. Moreover, similar features of the WEBSITE, previously identified above, have required an extraordinary expenditure associated with the research and development of these features as part of maintaining, improving and updating the WEBSITE.

15. As a reflection of the reputation and success of the WEBSITE, numerous publications have reviewed, praised and identified the WEBSITE as a major or the definitive website for access to free public records on the Internet. These publications and articles encompass the period 1998 to present with recent articles in The New York Times describing the WEBSITE in very positive terms in articles published on November 5 and November 13, 2005. See true and correct copies of The New York Times articles concerning Plaintiff's WEBSITE attached hereto and incorporated herein as *Exhibit "3."*

16. In addition, other publications have, over the years, repeatedly praised the WEBSITE: Yahoo Internet Life magazine named the WEBSITE in July, 2002 as one of the Internet's "50 most incredibly useful sites"; PC World named the WEBSITE in February, 2003 as one of "the most useful sites ever"; the Wall Street Journal on September 15, 2003 called the WEBSITE "one of the best"; and recently as March 16, 2006 Poynter Online, a website devoted to journalists and providing resources to them, described the WEBSITE as a resource enabling journalists "to enrich stories and dig deeper." In addition, another publication devoted to journalism, The Columbia Journalism Review, in July, 2003 described the WEBSITE as "the best site for finding public records." See true and correct copies of articles concerning Plaintiff's WEBSITE attached hereto and incorporated herein as *Exhibit "4."*

17. Moreover, the WEBSITE has consistently been ranked by various Internet search engines such as Google, Yahoo, MSN and AOL as the "number 1" database for public records, over the past five years. The WEBSITE is the first listing to appear after a search for the phrase "public records" when using the above-listed search engines.

5
**COMPLAINT FOR CIVIL CONTEMPT AND BREACH OF CONTRACT**

18.     Plaintiff has certainly since 2001, if not earlier, openly posted on its WEBSITE a section known as "Terms of Service" ("TOS") which essentially, inter alia binds the user of the WEBSITE to the Terms of Service otherwise the potential user is not authorized to access the WEBSITE.  As part of the TOS, the following are defined:  acceptable usage of the WEBSITE, use of the WEBSITE limited to personal use, hyperlinking being prohibited, limits on advertising, appropriate copyright and SERVICE MARKS notices, as well as disclaimer of warranties, limitation of liability, and choice of law.  A true and correct copy of the TOS is attached hereto and incorporated herein as *Exhibit "5."*

19.     There came a time (within the expiration of any applicable statute of limitations) when Defendants, and each of them, embarked upon a scheme to copy the "source code" comprising the computer program that runs the WEBSITE.  That source code presently is written in PHP, which stands for "PHP":  "Hypertext Processor" ("PHP").  PHP is a programming language used for developing dynamic web content, whereby the WEBSITE's content is updated seamlessly and continuously in real time as new or additional records are attached to the thousands of databases accessed through the WEBSITE, such as that found on the WEBSITE.

20.     When Plaintiff originally developed the WEBSITE hosted at EarthLink in 1996 and the subsequent website at www.pac-info.com (released in 1998) the WEBSITE was designed in HTML which stands for "Hyper Text Markup Language".  Moreover at the time the WEBSITE did not have any technical protocols or technological protocols to guard from theft.

21.     As Plaintiff became aware that sites of Defendants such as publicrecordfinder.com had copied Plaintiff's HTML pages, Plaintiff commenced developing a new WEBSITE that was programmed in PHP in 2001.  Plaintiff's revised deployment of its website in PHP was an unequivocal attempt by Plaintiff to repel the various Defendants' "copying" incursions onto the WEBSITE.  Each link destination as written and programmed in PHP for the WEBSITE, was entered into Plaintiff's database in a manner so that if and when Defendants or others tried to

copy Plaintiff's WEBSITE pages, they would find Link ID's corresponding to the link in Plaintiff's database but not the ultimate URL (Uniform Resource Locator).

22. Plaintiff's programming changes from HTML to PHP were incorporated into a new WEBSITE and web pages at www.searchsystems.net and released in 2001. The prior programming located at pac-info.com was discontinued and all traffic to www.pac-info.com was forwarded to www.searchsystems.net.

23. In or about 2005, Plaintiff became aware that some party or parties had gone through and copied the content of Plaintiff's WEBSITE and had gone through the diligent and intentional effort of determining the location of each URL for each coded link in Plaintiff's website. In other words, these parties deliberately and intentionally circumvented the various technological measures deployed by Plaintiff that effectively controlled access to the Database contained within the WEBSITE.

24. Plaintiff in and about April, 2005 then changed the WEBSITE again and released a new version of the WEBSITE at www.searchsystems.net which is now a "framed" WEBSITE so that even if a party determined to circumvent the technological measures deployed by Plaintiff that effectively control access to the Database, the URL for a particular link is hidden by the frame. Plaintiff has also instituted a system in which the Database Link ID is hidden by a programming system called "MD5" which is a "hash" algorithm that creates a random stream of letters and numbers. Thus, anyone that clicks on to Plaintiff's website now will see the random MD5 code rather than the numbered Link ID for a particular Database.

25. In or around April, 2005 the Defendants invaded the WEBSITE, whereby they successfully circumvented the technological measures deployed by Plaintiff to protect Plaintiff's copyrighted works, including, but not limited to inter alia Plaintiff's source code and Plaintiff's proprietary layout, design and organization of the data and links.

26. The Rosson Defendants, *inter alia*, circumvented the codes Plaintiff developed to mask the public Universe Resource Locators of all of the links to the thousands of public

7
**COMPLAINT FOR CIVIL CONTEMPT AND BREACH OF CONTRACT**

databases Plaintiff had established comprising the WEBSITE. Because of the unique syntax and semantics of those links, Plaintiff has been able to determine that they are in fact the links written by Plaintiff, as opposed to any original creation of Defendants, or any of them. Furthermore, the Rosson Defendants copied inter alia: (1) Plaintiff's selection of pertinent links; (2) Plaintiff's scheme of organization for the links; (3) the categories into which the links are organized; (4) and the actual original descriptions that Plaintiff authored to describe each link, and (5) the database to which it directed the user.

27. Up until March of 2007, a potential customer could perform a basic search on the WEBSITE at no charge. Before March, 2007, Plaintiff monetized the WEBSITE by charging a premium for advanced services, such as a shorter waiting time to access information. The Rosson Defendants, on the other hand, charged a potential user for access to even rudimentary information. Shortly after Defendants commenced their illegal pirating of Plaintiff's WEBSITE, Plaintiff was inundated with complaints from persons who had paid for access to the Rosson Defendants' sites, but who thought they were accessing the WEBSITE (i.e., Plaintiff's WEBSITE). *See Exhibit "6" attached hereto*. This in turn lead to considerable discussion of the WEBSITE in various on-line forums, which are and have become even more influential in determining the behavior and selections made by Internet users.

28. Many of the remarks pertaining to the WEBSITE were adverse, and Plaintiff was required to devote considerable time, money, energy and expertise to maintaining its business relationships with its existing customers, and to fortify the potential economic advantages it anticipated deriving by transacting with future customers. The sort of "negative feedback" that Plaintiff received as a result of the Rosson Defendants unlawful activity is particularly ominous for a company such as Plaintiff, which depends for its economic sufficiency and vitality upon the goodwill and continued patronage of its customers. And, given the persistency of feedback loops such as those that are developing on the Internet, even a few negative recommendations have the potential to wreak devastating consequences.

8
**COMPLAINT FOR CIVIL CONTEMPT AND BREACH OF CONTRACT**

29. As a result of the Rosson Defendants unlawfully accessing the content of Pacific's WEBSITE, the Rosson Defendants launched a competing website called Websherlock.com that also offered a directory of public records websites.

30. Pacific discovered in late 2005 that large sections of the Websherlock.com website were suspiciously similar to Search Systems.

31. In August 2006, Pacific sued the Rosson Defendants and others in the United States District Court, for the Northern District of California, for copyright and trademark infringement, computer fraud, unfair business practices, and other related claims in the action entitled *Pacific Information Resources, Inc. v Diana Musselman, et. al.*, Case No. 06-02306 MMC. (*See Third Amended Complaint attached hereto as Exhibit "7". The exhibits to the Third Amended Complaint have already been provided in Exhibits 1-6 hereinabove.*)

32. In April 2007, Pacific and the Rosson Defendants reached a settlement. The settlement involved two documents: a Settlement Agreement and a Stipulated Permanent Injunction.

33. The Settlement Agreement included a confidentiality clause, so it cannot be reproduced in its entirety. (The actual Settlement Agreement will be filed with the Court upon the Court granting leave to file the document under seal.) However, a key provision of the Settlement Agreement required the Rosson Defendants to turn over all of their website domain names (aka "URLs") to Pacific:

> "Any and all websites owned and operated by [the Rosson Defendants] which are the subject of the [Pacific] Action, including, but not limited to, www.websherlock.com, shall be immediately terminated from operation and their Uniform Resource Locator address (URL's) shall be immediately assigned to [Pacific]."

34. In addition to the URL for Websherlock.com, the Rosson Defendants also owned Websherlock.net, Websherlock.org, Websherlock.tv, Websherlock.info, and others. All these URLs were within the scope of the Settlement Agreement and were to be turned over to Pacific.

35. But the Rosson Defendants failed to follow through on their promise to transfer the domain name URLs. Instead, they allowed their ownership of the domain names to lapse by failing to pay certain fees required to maintain them. Unknown third parties then registered the domain names for themselves, preventing Pacific from taking ownership of them.

36. By this failure to perform as required under the Settlement Agreement, the Rosson Defendants clearly violated the Settlement Agreement.

37. The settlement between Pacific and the Rosson Defendants also included a Stipulated Permanent Injunction, a copy of which is attached to this complaint as *Exhibit "8."*

38. The injunction required Matthew Rosson, Linda Rosson, and Rosson Ventures, LLC (and implicitly Barry Rosson, as an unnamed family member) to avoid "diluting the distinctive quality of Pacific's service marks" or "otherwise competing unfairly with Pacific". The Rosson Defendants also agreed not to "authoriz[e] anyone to do the same". Stipulated Injunction at 3.

39. By allowing their domain names to fall into the hands of third parties, the Rosson Defendants impliedly authorized others to continue to use the Websherlock name. Third parties are now free to establish new websites using these domain names, trading on the popularity of the Websherlock name — popularity that originally accrued through improper use of Pacific's intellectual property.

40. Furthermore, competitors of Pacific have begun to buy advertising on search engines like Google and Yahoo using "Websherlock" as a keyword. This means that when a user types in one of the "Websherlock" domain names into Google or Yahoo, they will see ads for Pacific's competitors.

41. If Pacific owned the Websherlock domain names, as was intended by the Settlement Agreement and the Stipulated Injunction, Pacific could have prevented these improper uses of the "Websherlock" trademark. Owing to the Rosson Defendants' failure to

10
**COMPLAINT FOR CIVIL CONTEMPT AND BREACH OF CONTRACT**

transfer the domain names, Pacific is powerless to stop the continued injury caused by third-party exploitation of the Websherlock name.

42. In addition to their failure to transfer the domain names as promised, the Rosson Defendants have flouted the Settlement Agreement and Stipulated Permanent Injunction in other ways. Two examples:

(a) First, the Rosson Defendants have failed to remove Websherlock.com from "affiliate marketing" websites. (Three samples are attached to this complaint as *Exhibit "9"*.) Affiliate marketing is a promotional technique where private individuals (the "affiliates") sign up to promote destinations like Websherlock.com to other Internet users. In return, the affiliates get commissions (often in the range of 50-75%) on the new business they generate for these destinations;

By allowing Websherlock.com to continue to appear on these affiliate marketing websites, the Rosson Defendants are holding out Websherlock.com as an ongoing business, damaging Pacific's business;

(b) Second, as recently as July 2007, the Rosson Defendants have been using the email address "websherlock@mac.com" for business correspondence. By doing this, the Rosson Defendants are still trading on the ill-gotten reputation of the Websherlock name.

## FIRST CLAIM FOR RELIEF

**(Civil Contempt - Against All of the Rosson Defendants)**

43. Plaintiff Pacific repeats, realleges and incorporates by reference as if fully set forth herein the allegations set forth in paragraphs 1 through 42 above.

44. Pacific alleges that the conduct of the Defendants herein above as alleged violated the terms of the Stipulated Permanent Injunction and they are therefore liable for civil contempt.

## SECOND CLAIM FOR RELIEF

**(For Breach of Contract - Against All of the Rosson Defendants)**

45. Plaintiff Pacific repeats, realleges and incorporates by reference as if fully set forth herein the allegations set forth in paragraphs 1 through 44 above.

46. The Settlement Agreement between Pacific and the Rosson Defendants was an enforceable contract.

47. Under this Settlement Agreement, Pacific promised to dismiss with prejudice the original claims against the Rosson Defendants. Pacific fully performed this promise.

48. The Rosson Defendants, however, breached the Settlement Agreement as described hereinabove by not fully performing.

49. Pacific has suffered and continues to suffer damages as a result of this breach.

## PRAYER

WHEREFORE, Plaintiff Pacific Information Resources, Inc. demands judgment against the Rosson Defendants as follows:

1. For general and special damages to be proven at trial, to the extent allowed by law, but not less than $75,001;

2. For compulsory injunctive relief to the extent allowed by law, including specific performance of the terms and conditions in the Settlement Agreement and the Stipulated Permanent Injunction;

3. For attorney's fees and costs to the extent allowed by law;

4. For punitive damages, or exemplary damages, or enhanced damages, or treble damages to the extent allowed by law; and

///
//
/

5.  For any other relief that this Court deems proper.

Dated: August 23, 2007

Respectfully submitted,
NOVO LAW GROUP, P.C.

By: _____
Konrad L. Trope, Esq.
Attorneys for Plaintiff PACIFIC INFORMATION RESOURCES, INC.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

Respectfully submitted,

Dated: August 23, 2007

NOVO LAW GROUP, P.C.

By: /s/ Konrad L. Trope
Konrad L. Trope, Esq.
Attorneys for Plaintiff PACIFIC INFORMATION RESOURCES, INC.

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

Pursuant to Civil L.R. 3-16, the undersigned certifies that the following listed persons, associations or persons, firms, partnerships, corporations (including parent corporations) or other entities (I) have a financial interest in the subject matter in controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject matter or in a party that could be substantially affected by the outcome of this proceeding:

ROSSON VENTURES, LLC

MATTHEW ROSSON, as an individual

LINDA K. ROSSON, as an individual

BARRY T. ROSSON, as an individual

Dated: August 23, 2007

Respectfully submitted,

NOVO LAW GROUP, P.C.

By: _____
Konrad L. Trope, Esq.
Attorneys for Plaintiff PACIFIC INFORMATION RESOURCES, INC.